1

The Honorable Richard A. Jones

2

3

4

5

6

7

8     UNITED STATES DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
                 AT SEATTLE

9

10    ESTATE OF ROBERT S. FELTS, deceased, by )
      and through its Personal Representative, SUSAN )   No. C06-1419 RAJ
      CHARLES,                              )

11                                          )   GENWORTH LIFE INSURANCE
                                            )   COMPANY'S AND JEFFREY
12                Plaintiffs,               )   REESE'S MOTION FOR
                                            )   SUMMARY JUDGMENT
      v.                                    )

13                                          )
      GENWORTH LIFE INSURANCE COMPANY, )

14    a Delaware corporation,               )   *Noted on Motion Calendar:*
      IMMEDIATEANNUITIES.COM, a foreign     )   September 12, 2008
15    corporation, HERSH STERN, an individual )
      resident of New Jersey, JEFFERY REESE, an )   *Oral Argument Requested*
16    individual, and Does 1-25,            )
                                            )

17                Defendants.               )
                                            )

18    _____)

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND .......................................................................................................3

    A.   Felts' Annuities ..............................................................................................3

    B.   Felts' Awareness of What He Was Purchasing ...........................................4

    C.   Course of Proceedings ..................................................................................6

III.  LEGAL ARGUMENT ..............................................................................................7

    A.   The Court Should Grant Summary Judgment Because There Is Nothing Wrong with LOSPIAs and Felts Was Competent to Buy Them. ................7

        1.   The Estate's Claims Fail to the Extent They Rest on Assertions of the Inherent Unsuitability of LOSPIAs....................................................8

        2.   The Estate Has No Basis to Attack Felts' Mental Competency to Purchase the Annuities....................................................................10

        3.   Felts' Repeated Affirmations That He Knew the Consequences of Buying a LOSPIA Estop the Estate from Challenging the Contracts. ...................................12

    B.   The Court Should Grant Summary Judgment Because The Estate Cannot Present Any Evidence that Genworth Misled Felts.........................................13

    C.   The Court Should Grant Summary Judgment Because the Estate Concedes Felts Bought What He Wanted, Thus Defeating the Causation Element of Each of His Claims. ..............................................................................15

        1.   The Estate Cannot Present Evidence of "but for" Causation. ................16

        2.   The Estate Cannot Demonstrate Legal Causation. ..................................18

    D.   Leaving Aside Issues of Causation, the Court Should Grant Summary Judgment Based on Other Deficiencies in the Estate's Claims....................19

        1.   Because the OIC Has Approved Genworth's Sale of Life-Only Annuities, the Estate's Statutory Claims Are Barred.............................20

        2.   The Contractual Allocation of Risk Bars the Mistake Claim ...............20

        3.   Because Felts Received What He Contracted For, the Estate Cannot Recover on its Criminal Profiteering Claim. ..................................21

        4.   The Express Contracts Bar the Unjust Enrichment Claim. ...................21

        5.   The Economic Loss Rule Bars Negligence and Negligent Misrepresentation Claims. ....................................................................22

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ)
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

6.   The Estate Cannot Raise an Issue of Material Fact as to Whether Felts Relied on Something that Genworth Said, Which Bars the Misrepresentation and Profiteering Claims. .................................................................................................22

7.   The Relevant Statutes of Limitations Bar Action on Several of These Annuities. ..23

IV.  CONCLUSION ..................................................................................................23

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ)
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

### <u>TABLE OF AUTHORITIES</u>

**Page(s)**

4

**FEDERAL CASES**

*Bacon v. American Int'l Gp.*,
   415 F. Supp. 2d 1027 (N.D. Cal. 2006) ..................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................7, 15

*Estate of Robert S. Felts v. Genworth Life Ins. Co.*,
   2008 U.S. Dist. LEXIS 40835 (W.D. Wash. Apr. 14, 2008)....................7

*Mass. Mut. Life Ins. Co. v. Hardwick*,
   118 F. Supp. 485 (E.D. Tenn. 1953) ......................................................9

*Moses v. Mfrs. Life Ins. Co.*,
   298 F. Supp. 321 (D.S.C. 1968).............................................................9

*Rishel v. Pacific Mut. Life Ins. Co.*,
   78 F.2d 881 (10th Cir. 1935) .................................................................8, 9

*Sipes v. Equitable Life Assur. Soc.*,
   1996 WL 507308 (N.D. Cal. Aug. 13, 1996) .........................................19

*United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
   290 F.3d 1199 (9th Cir. 2002) ...............................................................21

**STATE CASES**

*Alejandre v. Bull*,
   159 Wn.2d 674, 153 P.3d 864 (2007)....................................................22

*Am. State Bank of Bloomington v. Nat'l Life Ins. Co.*,
   17 N.E.2d 256 (Ill. Ct. App. 1938) ........................................................8, 9

*Ang v. Martin*,
   154 Wn.2d 477, 114 P.3d 637 (2005).....................................................16, 18

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys. Inc.*,
   61 Wn. App. 151, 810 P.2d 12 (1991)....................................................16

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ)
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,*
   124 Wn.2d 816, 881 P.2d 986 (1994) ............................................................22

*Chandler v. Wash. Toll Bridge Auth.,*
   17 Wn.2d 591, 137 P.2d 97 (1943) ...............................................................21

*Colonial Imports, Inc. v. Carlton Northwest, Inc.,*
   121 Wn.2d 726, 853 P.2d 913 (1992) ............................................................19

*Crane & Crane, Inc. v. C&D Elec., Inc.,*
   37 Wn. App. 560, 683 P.2d 1103 (1984) .......................................................16

*Crowe v. Gaston,*
   134 Wn.2d 509, 951 P.2d 1118 (1998) .....................................................13, 16

*Elliott Bay Seafoods, Inc. v. Port of Seattle,*
   124 Wn. App. 5, 98 P.3d 491 (2005) .......................................................14, 16

*Grenall v. United of Omaha Life Ins. Co.,*
   2008 Cal. App. LEXIS 1148 (Cal. App. July 25, 2008) .........................9, 21, 22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
   105 Wn.2d 778, 719 P.2d 531 (1986) ............................................................18

*Hartley v. State,*
   103 Wn.2d 768, 698 P.2d 77 (1985) .........................................................17, 18

*In re Gallagher's Estate,*
   35 Wn.2d 512, 213 P.2d 621 (1950) ..............................................................10

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,*
   162 Wn.2d 59, 170 P.3d 10 (2007) ........................................................13, 15, 17

*Kim v. Budget Rent-a-Car Sys., Inc.,*
   143 Wn.2d 190, 15 P.3d 1283 (2001) ............................................................19

*Lynch v. Deaconess Med. Ctr.,*
   113 Wn.2d 162, 776 P.2d 681 (1989) ............................................................13

*MacDonald v. Hayner,*
   43 Wn. App. 81, 715 P.2d 519 (1986) ...........................................................21

*Oliver v. Flow Int'l Corp.,*
   137 Wn. App. 655 (2006) ..............................................................................13

*Page v. Prudential Life Ins. Co. of Am.,*
   12 Wn.2d 101, 120 P.2d 527 (1942) ......................................................10, 11, 12

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ)
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Pub. Util. Dist. No. 1 of Lewis Cty. v. Wash. Pub. Power Supply Sys.*,
  104 Wn.2d 353, 705 P.2d 1195 (1985)................................................20

*Schmidt v. Cornerstone Investments, Inc.*,
  115 Wn.2d 148, 795 P.2d 1143 (1990)...............................................18

*Seattle Prof. Eng'g Employees Ass'n v. Boeing Co.*,
  139 Wn.2d 824, 991 P.2d 1126 ............................................................16

*Sheldon v. Am. States Preferred Ins. Co.*,
  123 Wn. App. 12, 95 P.3d 391 (2004)..................................................17

*Smith v. Preston Gates Ellis LLP*,
  135 Wn. App. 859, 147 P.3d 600 (2006)..............................................17

*Sorenson v. Pyeatt*,
  158 Wn.2d 523, 146 P.3d 1172 (2006).................................................13

*State v. Casey*,
  81 Wn. App. 524, 915 P.2d 587 (1996)................................................22

*State v. Lee*,
  128 Wn.2d 151, 904 P.2d 1143 (1995)...........................................14, 21

*Stiley v. Block*,
  130 Wn.2d 486, 925 P.2d 194 (1996)........................................14, 16, 22

*Tabachinsky v. Guardian Life Ins. Co.*,
  147 N.Y.S.2d 719 (1956)........................................................................9

*Tank v. State Farm Fire & Cas. Co.*,
  105 Wn.2d 381, 715 P.2d 1133 (1986).........................................15, 20

*Tjart v. Smith Barney, Inc.*,
  107 Wn. App. 885, 28 P.3d 823 (2001)................................................12

*Washington State Physician Ins. Exchange & Ass'n v. Fisons Corp.*,
  122 Wn.2d 299, 858 P.2d 1054 (1993).................................................17

## STATE STATUTES

RCW 4.16.080 ...............................................................................................23

RCW 9A.56.010(4).........................................................................................16

RCW 9A.56.020 .............................................................................................21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

RCW 9A.82.010 ........................................................................................................21

RCW 9A.82.100 ........................................................................................................21

RCW 19.86.020 ........................................................................................................13

RCW 19.86.120 ........................................................................................................23

RCW 19.86.170 .....................................................................................................2, 20

RCW 48.18.100 ....................................................................................................8, 20

RCW 48.30.010(1) ...................................................................................................13


**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................................7


**REGULATIONS**

WAC 284-58-140(9) ..............................................................................................8, 20


**OTHER AUTHORITIES**

Restatement (Second) Torts § 546 ...........................................................................16

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ)
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.   INTRODUCTION

Beginning in 1994, when he was 84, and continuing until he died at age 94 in 2004, Robert Felts, a career insurance salesman, used a systematic and consistent plan to buy 68 annuities through defendant Hersh Stern.  He also bought annuities from other sources, for the benefit of both himself and his children.  Felts received impressive payouts from these annuities, averaging over $150,000 in annuity income in the last two years of his life.  Genworth Life Insurance Company[1] issued only ten of these annuities, including five "life only" single premium immediate annuities ("LOSPIAs").  This lawsuit focuses only on those five, which Felts bought in 2001, 2002, and 2003 – each time acknowledging in writing that he understood that the LOSPIA payments would terminate upon his death, with no refund.

His Estate attacks the choices that Felts made.  The Estate's laundry list of claims boils down to two fundamental attacks on these life-only annuities: (1) the Estate claims that the very fact of selling LOSPIAs to Felts was improper in itself, even though that was exactly what Felts wanted, and (2) the Estate claims that Felts did not understand what he was doing, and that Genworth somehow preyed on that alleged misunderstanding.  Neither of these attacks, however stated, can survive summary judgment.

The first attack fails as a matter of law.  As this Court observed when it denied plaintiff's motion for class certification, LOSPIAs are legitimate contracts that allow annuitants to trade future assets in their estate for present income during their lives.  Order [Dkt No. 100] at 1-2.  For more than a hundred years, every court to consider similar claims has rejected them, finding nothing intrinsically improper with the sale of life-only annuities, even to people who died shortly after their purchase (which did not occur here).  Further, the Office of the Insurance Commissioner ("OIC") has approved Genworth's use of its life-only annuity form for sales to people up to 100 years of age.

---

[1] Genworth was formerly known as GE Capital Assurance Company, a subsidiary of General Electric Company.  Genworth is now a subsidiary of Genworth Financial, Inc., a publicly traded company.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 1
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The second attack fails because the Estate cannot present any evidence that Felts failed to understand what he was purchasing.  Indeed, the unrefuted evidence shows that Felts knew exactly what he was doing—he knew that purchasing life-only annuities would deplete his estate, while greatly increasing his income during the remainder of his life.  As Felts explained in one handwritten note to Genworth, "Yes I know a Non Refund leaves 0 to my estate.  I've already bought my children off & out of estate."  Nor does any evidence support the Estate's claims that Genworth failed to disclose information that would have been material to Felts' decision to purchase these annuities.  The record does not disclose any information that Felts needed to know that he did not know already.  And the evidence shows that any further disclosure to Felts would have been irrelevant: he knew what he wanted (life-only annuities), and he would have purchased them no matter what Genworth said.  Indeed, the Estate itself admits that Felts got what he wanted and would not have heeded contrary advice.

Because the Estate concedes that Felts knew what he was doing, that he received what he wanted, and that more disclosure by Genworth would have been irrelevant, the Estate cannot prove that Genworth or Reese committed any legal wrong, or that any act or omission by Genworth or Reese caused injury to Felts.  Because proof of both a legal wrong and causation is essential to each of the Estate's claims, the Court should grant summary judgment and dismiss all of the Estate's claims against Genworth and Jeffrey Reese.

In addition, the Estate cannot succeed on its specific claims for various independent reasons.  Because the Washington Insurance Commissioner approved the contracts that Felts entered with Genworth, RCW 19.86.170 bars the Estate's statutory claims.  The doctrine of mistake does not provide any relief to the Estate because Felts assumed the risk that he might not live long enough to recoup his payments.  Further, the fact that this case arises from lawful contracts that Genworth fully performed bars the Estate's frivolous claim under the Criminal Profiteering Act, as well as its claims for unjust enrichment and negligence.  The Estate cannot present any evidence of Felts' reliance, which bars its claims for negligent misrepresentation and under the Washington Criminal Profiteering Act.  Finally, even if the

1   Estate were able to overcome all of these impediments to its claims, the relevant statutes of

2   limitations bar claims on several of the LOSPIAs at issue.

3                                    **II.      BACKGROUND**[2]

4            **A.    Felts' Annuities**

5            Beginning in 1994, when he was 84 years old, Robert S. Felts purchased 68 annuities

6   through defendant Hersh Stern from a variety of companies, including Genworth.  *See* Stern

7   Dep. 168:23-170:18 (Stolle Decl. [Dkt. No. 75], Ex. C); Shearer Decl. [Dkt No. 90], Ex. 7.

8   Stern had been authorized to solicit applications and accept premiums for Genworth products

9   since the early 1990s.  Stern Dep. 9:16-10:3; Layton Dep. 83:20-23 (Stolle Decl. [Dkt No.

10  75], Exs. A & A-1).  Felts also purchased annuities through other agents, *see, e.g.,* Shearer

11  Decl., Exs. E & F, and as a vehicle for charitable giving.  *See id.*, Ex. G.  Out of more than 80

12  annuity policies (from more than a dozen companies) that were paying Felts in 2003, Felts

13  bought ten from Genworth, including five LOSPIAs purchased from 2001 through 2003:

| Policy Number | Purchase Date | Premium | Monthly Payment |
|---|---|---|---|
| YGEC 101888 | August 2001 | $10,000.00 | $216.50 |
| 3856746 | February 2002 | $30,000.00 | $688.31 |
| 3864923 | November 2002 | $61,420.00 | $1,355.16 |
| 3867121 | March 2003 | $15,000.00 | $326.58 |
| 3869052 | June 2003 | $40,000.00 | $857.31 |

18  *See* Shearer Decl., Ex. D at Felts 000915-000920; *id.*, Ex. H.  These five are the only

19  annuities that the Estate is challenging.  Charles Dep. 119:1-120:14 (Shearer Decl. [Dkt. No.

20  90], Ex. C).  In other words, the Estate has no concerns about 76 of the 81 annuities that paid

21  Felts in 2003; it challenges only the LOSPIAs that maximized income to Felts personally,

22  while reducing what he would leave to his Estate.

23          Felts bought four of these contracts through Stern.  Genworth did not have any

24  interaction with Mr. Felts in those four transactions other than to provide and process the

25  application forms and to issue the SPIAs.  To purchase the remaining LOSPIA (#3867121),

26  Felts called Genworth in March 2003, was routed to its customer retention department, and

27  _____

[2] The movants rely largely on the materials they submitted in opposition to plaintiff's motion for class certification.  Genworth will submit a complete set of working papers for the Court with its reply brief.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 3
DWT 11169390v8 0081972-000001

asked Jeffrey Reese (who happened to take the call) about purchasing a life-only annuity. Reese Dep. 68:24-69:8 (Stolle Decl. [Dkt No. 75], Ex. B).  After a brief conversation, Reese sent Felts a blank application form for a SPIA along with an illustration of his anticipated income stream over the remainder of Felts' life.  Felts completed the application and returned it to Genworth for processing.  *Id.* at 68:17-70:25; 75:17-77:7 (explaining form and illustration).

Felts' annuities generated impressive income.  In 2002, he received $148,701.00 in payments from his annuities, Charles Dep. 51:17-20; Shearer Decl., Ex. I, and his annuity payments increased to $172,716.00 in 2003.  Charles Dep. 53:13-22; Shearer Decl., Ex. J. Felts lived off that income, much of which was fixed for life, and he used it to make other investments, including investments in notes secured by mobile home mortgages.  *See* Charles Dep. 146:12-21.  After his death, some of Felts' annuities continued to produce income for his heirs, as did the investments he had made with his annuity income.  *Id.* 143:13-25, 144:1-19. By 2007, for example, three years after Felts died, his two children still were receiving annually approximately $15,000.00 each from Felts' investments in mobile home notes (funded with his annuity income) ***plus*** between $7,700.00 and $8,900.00 each in annuity payments annually.  *See id.* 144:1-19; Shearer Decl., Ex. K.

## B.    Felts' Awareness of What He Was Purchasing

This case does not involve any allegation that Genworth or Reese advised or told Felts to purchase life-only annuities.  Instead, the parties agree that Felts, a former annuity salesman, bought what he wanted, when he wanted, and with the funds he chose.

The uncontradicted evidence establishes that, rather than soliciting or acting on Stern's or Reese's recommendations, Felts chose the types of SPIAs he wanted to purchase, which included a mix of life-only, term, and term plus life SPIAs.  *See* Shearer Decl., Ex. D at Felts 000915-000920.  Indeed, Felts told Stern he was a former insurance agent and chided Stern based on Felts' superior experience.  Stern Dep. 87:5-89:2 ("He said, you young whippersnapper, you are half my age."); 113:18-115:8.  In fact, before retirement, Felts

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 4
DWT 11169390v8 0081972-000001

1   worked in the insurance industry for over 20 years, selling both life insurance and group

2   insurance.  Charles Dep. 15:4-16:25.  After he retired, Felts began buying annuities regularly,

3   both for himself and his children.  He chose not to work with an investment or financial

4   advisor but instead relied on his own knowledge.  *Id.* 74:11-75:3.  According to the Estate's

5   Personal Representative, Felts "was very independent in … his financial matters, and didn't

6   really want to have any – he wouldn't have wanted any help or advice.  He felt he could do

7   things by himself." *Id*. 39:1-4.  Stern recognized that Felts was "in a class of his own" when

8   it came to annuities.  *Id.* at 95:21-96:17; *see also* Reese Dep. 71:13-72:10 (recognizing that

9   Felts had "industry experience").

10         No one seriously denies that Felts understood what he was doing.  Regardless,

11   Genworth sought and received confirmation that Felts understood and desired the SPIAs he

12   purchased.  Before it issued each life-only annuity contract, Genworth took the precaution of

13   requiring Felts to sign (and have notarized) an acknowledgement confirming that he knew that

14   annuity payments would stop at his death:

15         I understand that this is a non-refund annuity contract and that: 1.
       Annuity payments commence on Date of First Annuity Payment as
16         specified in the Schedule; 2.  Payments are to be made as specified in the
       Schedule; and 3.  The annuity contract terminates on the date of the
17         Annuitant's death.

18   Layton Decl. [Dkt. No. 89] ¶ 17, Ex. D.  Felts signed acknowledgements for all five LOSPIAs

19   in the presence of a notary.  *See* Layton Decl., Ex. D (GLI001086, -266, -726); Second

20   Layton Decl., Ex. A (GLI000364, -931).

21         Felts went out of his way to show that he understood LOSPIAs.  On one

22   acknowledgement form, Felts added a note to emphasize his intentions:

23         The annuitant, Robert S. Felts is the survivor of his 63 year marriage to
       his wife who died last January 15, 2002. … Mr. Felts at age 92 ¼ … is
24         fully aware of what he is buying and doing after 65 normal years in life
       insur business.  Non refund is desired for himself only.

25   Layton Decl., Ex. D (GLI001086).  On a different form, Felts wrote to Genworth that "Yes I

26   know a non-refund leaves 0 to my estate.  I've already bought my children off & out of

estate." Shearer Decl., Ex. D at Felts 000926. In a letter dated June 21, 2002, Felts wrote

Genworth to say that he "want[ed] a non-refund S.P.I.A. on my ow[n] life alone and no one

else's and *you owe my estate nothing* if I die in a cou[]ple of weeks after you issue the

contracts." Shearer Decl., Ex. D at Felts 000923 (emphasis added). On two of his LOSPIA

applications, Felts noted in his own handwriting that he was interested in purchasing only

lifetime annuities. Second Layton Decl., Exs. B-F (GLI000952) (stating "Non Refund

Application"), (GLI000287) ("The income stops + dies after the death of above Robert S.

Felts."). Knowing all this, Ms. Charles, Felts' daughter and the Personal Representative of

the Estate, admitted that Felts acknowledged that he understood what he was buying. Charles

Dep. 136:19-22.

Felts also bought several LOSPIAs from other companies. Before he bought

Genworth annuities, Felts purchased 17 LOSPIAs from other companies through Stern.

Shearer Decl., Ex. N; Stern Decl. [Dkt. No. 92] ¶ 25. Felts purchased at least four LOSPIAs

from a producer other than Stern and a company other than Genworth in 1999 and 2000.

Shearer Decl., Ex. F. In 2002, Felts even wrote to another insurer about LOSPIAs, saying,

"You'd owe my estate nothing at death nor will they nor can they contest … That's my risk!"

Stern Decl., Ex. H (STERN001122) (emphasis in original). In the same letter, he even

suggested he would turn elsewhere if that company would not sell him a LOSPIA. *Id.* Felts

also varied the types of annuities he purchased. For example, the last two annuities he

purchased from Genworth were term plus life annuities (i.e., their payment streams survived

Felts). Shearer Decl., Ex. N.

## C.     Course of Proceedings

Felts' heirs initially asserted claims in this action in their individual capacities, but the

Court dismissed those claims, along with the Estate's claims for breach of contract and

unconscionability, with prejudice in June 2007. Order on Motion to Dismiss at 3-4 [Dkt. No.

48]. On July 11, 2007, the Estate filed its Third Amended Complaint ("TAC") [Dkt. No. 49],

which purports to assert eight causes of action: (1) unjust enrichment, (2) unilateral mistake,

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 6
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

(3) negligence, (4) negligent or intentional misrepresentation, (5) violation of the Washington Insurance Code, (6) violation of the Washington Consumer Protection Act, (7) violation of the Washington Criminal Profiteering Act based on alleged "theft by deception," and (8) a request for injunctive/equitable/declaratory relief. *See generally* TAC at 19-30.

On April 14, 2008, the Court denied the Estate's Motion for Class Certification. *See Estate of Robert S. Felts v. Genworth Life Ins. Co.*, 2008 U.S. Dist. LEXIS 40835 (W.D. Wash. Apr. 14, 2008). In so doing, the Court found that Felts' familiarity with and professed understanding of annuities made him an unsuitable class representative. "While the Estate typecasts Genworth as predator and the class members as prey, Mr. Felts defies that characterization." Order [Dkt No. 100] at 20. Although the Court reserved decision on whether Felts understood the products he purchased more than 80 times in the last ten years of his life, the Court predicted that "Genworth will have ample evidence to support" its contention that Felts knew exactly what he was doing. *Id.* at 21. This motion rests on that "ample evidence" – and the absence of any evidence to the contrary.

### III.   LEGAL ARGUMENT

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because the Estate cannot present a genuine issue of fact as to essential elements of its proof, and because Genworth and Reese are entitled to judgment as a matter of law without proof of those elements, summary judgment is proper. Fed. R. Civ. P. 56(c).

### A.   The Court Should Grant Summary Judgment Because There Is Nothing Wrong with LOSPIAs and Felts Was Competent to Buy Them.

The Estate concedes that Felts knew what he was doing and received what he expected. Instead, the Estate argues that the sale of any LOSPIA to Felts was legally

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 7
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

impermissible, either *per se* or because Felts was unable to understand what he was buying. Neither argument withstands scrutiny.

### 1.    The Estate's Claims Fail to the Extent They Rest on Assertions of the Inherent Unsuitability of LOSPIAs.

The Estate's claims amount to a thinly veiled attack on the fact that Genworth made LOSPIAs available for purchase to elderly buyers such as Felts.  Indeed, the Estate repeatedly attacks LOSPIAs as "unsuitable" for Felts due to his age and physical condition.  *E.g.*, Micciche Decl. [Dkt. No. 74] ¶¶ 11-13.  This argument suggests that Genworth should not have sold LOSPIAs to Felts, regardless of what he knew about these products, what Genworth did or did not tell him about them, and what he wanted to do.

This paternalistic argument fails as a matter of law.  The Washington Office of the Insurance Commissioner, not the courts, determines what insurance products (including annuities) an insurer may issue in Washington.  The OIC has approved Genworth's SPIA contract and application for sales to persons up to and including age 100.  Layton Decl. ¶ 12; *see also* RCW 48.18.100 (requiring contract and application forms to be "filed and approved" by OIC, after which forms "may be used by the insurer"); WAC 284-58-140(9) (referring to contract form filings for "single premium … immediate annuities").  As a result, the Estate cannot prevail on any claim that LOSPIAs should not have been sold under any circumstances to Washington residents of Felts' age.  As other courts have recognized, where an insurance statute "permits the sale of annuities to senior citizens, [plaintiff] cannot state a claim based on the theory that the sale of … annuities to senior citizens is unlawful." *Bacon v. American Int'l Gp.*, 415 F. Supp. 2d 1027, 1031 (N.D. Cal. 2006) (common law claims as to deferred annuities barred based on California Insurance Code).

Leaving aside the OIC's approval of the Genworth LOSPIA form, as a matter of common law, life-only "[a]nnuity contracts are valid on their face and have been recognized and enforced by the courts for more than a century." *Rishel v. Pacific Mut. Life Ins. Co.*, 78 F.2d 881, 883 (10th Cir. 1935); *see Am. State Bank of Bloomington v. Nat'l Life Ins. Co.*, 17

N.E.2d 256, 260-61 (Ill. Ct. App. 1938).  Courts routinely have expressed approval of the use of life-only annuities as vehicles to guard against the adverse financial consequences of outliving assets: life annuitants pay for the certainty that they will receive regular payments for the rest of their lives, even if they live longer than they (or the actuarial tables) predict. *Bloomington*, 17 N.E.2d at 260.  If a purchaser "lives longer than the average of his age, he wins; not so long, he loses; but in the broader and truer sense, he has substituted certainty for uncertainty, which is the function of insurance." *Rishel*, 78 F.2d at 883.  "Both risks are contemplated by the parties and, indeed, are an integral part of their bargain." *Grenall v. United of Omaha Life Ins. Co.*, 2008 Cal. App. LEXIS 1148, at *11 (Cal. App. July 25, 2008). Thus, courts have enforced life-only annuities where the annuitant died long before reaching life expectancy, sometimes passing away shortly after entering into the contract. *See Moses v. Mfrs. Life Ins. Co.*, 298 F. Supp. 321, 326 (D.S.C. 1968); *Mass. Mut. Life Ins. Co. v. Hardwick*, 118 F. Supp. 485, 490 (E.D. Tenn. 1953); *Tabachinsky v. Guardian Life Ins. Co.*, 147 N.Y.S.2d 719, 721 (1956).

Indeed, just three weeks ago, a California Court of Appeals affirmed a summary judgment dismissing an estate's claims arising out of the purchase of a $321,131.00 LOSPIA by a woman who, it turned out, died of ovarian cancer four months after buying the SPIA, after receiving payments of only $9,000.00. *Grenall*, 2008 Cal. App. LEXIS 1148 at *1-*3. In rejecting the estate's attempt to rescind the LOSPIA based on the doctrine of mistake, the court explained that "parties who contract for 'life contingent' benefits necessarily do so based on limited knowledge" of matters such as health and life expectancy; the associated risk of dying early forms "an inherent part of life annuity contracts." *Id*. at *9, *10.

Based on this wealth of authority, the Court should grant summary judgment on the Estate's claims to the extent they challenge the sale of life-only annuities *per se* to Felts.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 9
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**2.      The Estate Has No Basis to Attack Felts' Mental Competency to Purchase the Annuities.**

Faced with the unvarying precedent rejecting challenges to the sale of life-only annuities, the Estate has attacked the circumstances of contract formation, suggesting that Felts was not capable of knowing what he wanted.  Indeed, in her deposition, Ms. Charles focused on a claim that Felts was mentally incompetent to purchase these LOSPIAs.  Charles Dep. 117:13-17 ("Q:  Just so I'm clear, your contention in this lawsuit is not that he didn't get what he wanted, your contention is he wasn't competent to make that decision, is that [right?] A:  Right.").  But on this record, this theory cannot provide any relief to the Estate.

"The test of mental capacity to contract is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged."  *Page v. Prudential Life Ins. Co. of Am.*, 12 Wn.2d 101, 108, 120 P.2d 527 (1942).  Every party to a contract is presumed to have the mental capacity to enter that contract -- regardless of age -- and this presumption may be overcome only by clear, cogent and convincing evidence.  *Id.* at 109.  Eccentricity and physical infirmity do not demonstrate a lack of legal capacity to contract.  *Id.* ("[N]either *age*, sickness, extreme distress, nor debility of body will affect the capacity to make a contract or a conveyance, if sufficient intelligence remains to understand the transaction.") (emphasis added).  Under Washington law, not even partial dementia will invalidate a contract; instead, "it must be such a general mental derangement as prevents the party from comprehending the nature of the contract … and from giving to it his free and intelligent consent."  *In re Gallagher's Estate*, 35 Wn.2d 512, 519-20, 213 P.2d 621 (1950).

The Estate's evidence does not satisfy this test as a matter of law.  The Estate's "proof" of Felts' supposed incapacity rests on circumstantial evidence of declining health.  Ms. Charles testified that Felts' personal hygiene declined and that he eventually died of congestive heart failure.  Charles Dep. 89:11-18.  Yet Felts' declining physical health is irrelevant to his competency.  *Page*, Wn.2d at 109.  Ms. Charles also claims that he started engaging in behavior that "wasn't consistent with behavior that he would have had throughout

his life," *id.* 117:21-23, but even then, "he was competent sometimes." *Id.* at 117:23-25.  Ms.

Charles also heard he had been diagnosed with delirium.  *Id.* at 46:25-47:10.  Ms. Charles's

report of that diagnosis is inadmissible hearsay; the Estate has not designated any physician as

a witness, so the alleged diagnosis will not be admissible at trial.  Moreover, that "diagnosis"

occurred ***after*** he bought his last life-only annuity in June 2003.  *Compare* Shearer Decl. Ex.

D at Felts 000920 *with* Charles Dep. 46:25-47:10.  The Estate admits that Felts thereafter was

sufficiently competent to enter into several transactions not challenged in this case.  Charles

Dep. 65:13-19, 79:1-9.  He declared himself to be of "sound mind" and executed his will

(which serves as the basis for Ms. Charles representative capacity in this action) in May 2004,

Charles Dep. 76:8-13, 79:1-11; Wright Decl., Ex. A; he purchased a term-certain annuity in

June 2004 (which the Estate does not contest), Shearer Decl., Ex. D (FELTS000920); and he

executed a Durable Power of Attorney in favor of Ms. Charles (again, declaring himself to be

of "sound mind") in August 2004.  Charles Dep. 55:4-22.  All of these events occurred more

than eleven months ***after*** Felts bought his last life-only annuity.  No one tried to have Felts

declared incompetent, sought to appoint a guardian, or tried to rescind any of these

transactions.  *Id.* 114:16-24.[3]

   *Page* shows that the Estate cannot present "clear, cogent and convincing" evidence to

question Felts' competency when he purchased the annuities at issue here.  Mr. Page, the

named insured of two life insurance policies, became disabled in 1924 and depended on his

family thereafter.  *Page*, 12 Wn.2d at 103.  In 1938, his heart and kidneys began to fail.  *Id.*

> As time passed, his vision failed and he became more paralyzed and helpless.  He
> was also irritable, excitable and obstinate, tolerating no opposition to his wishes.
> At times, he became hysterical, even threatening physical injuries to himself.
> Moreover, he believed that he possessed great business acumen and would plan

---

[3] The Estate claims that Felts took equity out of his house to purchase some of his life-only annuities.
Charles Dep. 89:19-92:5.  Even if this were true (and Genworth does not know if it is because there is
no evidence in the record), Felts easily could pay his mortgage from his annual annuity income, which
ranged up to $172,000.00 in the last years of his life.  *Id.* 90:13-91:22.  This strategy simply depleted
the assets that Felts otherwise might leave to his Estate.  *Id.* 159:9-20.  Moreover, the Estate's implicit
suggestion that Felts must have been incompetent because no elderly person in his right mind would
purchase a LOSPIA is simply another per se attack on these products, whose sale to persons up to 100
has been approved by the OIC.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 11
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

business ventures.  To relieve his restlessness, he performed light office duties in his son's insurance office for about ten days in November, 1938, his health preventing a longer period.

*Id.* at 104.  A year and a half before his death, Mr. Page surrendered his life insurance policies for their cash value.  The evidence showed that this choice was clearly his intention.  *Id.* at 104-05.  Nonetheless, his estate challenged Mr. Page's decision as the product of incapacity, based on his "physical condition, his excitability and attitude during the last years of his life," *id.* at 106, as well as the circumstantial evidence that he had sold the family car for an unreasonably low amount and had installed a furnace that was unsuited to his house.  *Id.*  The Supreme Court reversed a verdict in favor of the estate, holding that this evidence did not satisfy the stringent test of mental incapacity.  *Id.* at 109-10.  Most significant, the Court held that a doctor's opinion that Page "didn't consider any consequences; he considered only himself," showed nothing more than "selfish purpose upon the part of Page to acquire the money upon the policies, and that he failed to take into consideration the effect that it would have upon the dependents when he passed away."  *Id.* at 110.

The Estate here has far less evidence of incapacity than the evidence held insufficient as a matter of law in *Page*.  Because he had the capacity to purchase the LOSPIAs, Felts is "conclusively presumed to know [their] contents and to assent to them."  *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 897, 28 P.3d 823 (2001).  The evidence shows that Felts, while competent, considered the effect his choices would have on his Estate and chose to purchase LOSPIAs to increase his personal income, regardless (or perhaps because) of those consequences.  The Estate has no basis to attack Felts' purchase of these annuities.

### 3. Felts' Repeated Affirmations That He Knew the Consequences of Buying a LOSPIA Estop the Estate from Challenging the Contracts.

Genworth's acknowledgement that he knew what he was doing estops the Estate from asserting its claims.  Equitable estoppel depends on three elements:

(1) the conduct, acts, or statements by the party to be estopped are inconsistent with a claim afterward asserted by that party, (2) the party asserting estoppel took action in reasonable reliance upon that conduct, act, or statement, and (3) the

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

party asserting estoppel would suffer injury if the party to be estopped were allowed to contradict the prior conducts, act, or statement.

*Sorenson v. Pyeatt*, 158 Wn.2d 523, 538-539, 146 P.3d 1172 (2006).  The record contains ample evidence to estop the Estate as a matter of law.

The Estate stands in Felts' shoes with respect to this lawsuit.  But its actions squarely contradict Felts' repeated representations that he understood and agreed that payment under the LOSPIAs would terminate on his death.  He even repeated those representations before a notary.  And on one occasion he confirmed that "*you owe my estate nothing* if I die in a cou[]ple of weeks after you issue the contracts."  Shearer Decl., Ex. D at Felts 000923 (emphasis added).  Genworth relied on these statements; indeed, it would not have issued the LOSPIAs had Felts not returned the acknowledgement forms affirming his understanding and choice to purchase a LOSPIA.  Layton Decl. ¶ 17.  Moreover, Genworth priced the LOSPIA in reliance on the understanding that payments would stop on his death.  *Id.* ¶¶ 7, 9.  The Estate's claims seek to overturn that bargain, and success on any of them would undermine the basis of the bargain that Felts made, injuring Genworth by reversing the settled, contractual expectations that lie at the core of the LOSPIA.

### B.    The Court Should Grant Summary Judgment Because The Estate Cannot Present Any Evidence that Genworth Misled Felts.

Because LOSPIAs are legitimate products that Felts was competent to purchase, the Estate can recover only if it proves that Genworth and Reese engaged in "unfair," "deceptive," or "inequitable" conduct.  *See, e.g.*, RCW 19.86.020 (CPA prohibits unfair or deceptive acts or practices); RCW 48.30.010(1) (same under Insurance Code); *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 74, 170 P.3d 10 (2007) (CPA claim requires proof of unfair or deceptive act or practice); *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165, 776 P.2d 681 (1989) (unjust enrichment requires showing of inequitable conduct); *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 664 (2006) ("A party to a contract is entitled to reformation of the contract based on one party's unilateral mistake only if the other party engaged in inequitable conduct."); *Crowe v. Gaston*, 134

Wn.2d 509, 514, 951 P.2d 1118 (1998) (negligence requires proof of a breach of a duty);

*State v. Lee*, 128 Wn.2d 151, 163, 904 P.2d 1143 (1995) (no theft by deception for purposes

of Criminal Profiteering Act where each party receives what they bargained for).  The Estate

must prove such wrongdoing by clear, cogent and convincing evidence to succeed on its

misrepresentation claims.  *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996)

(intentional misrepresentation claim requires proof of knowingly false representation and

speaker's intent that recipient rely on that misrepresentation); *Elliott Bay Seafoods, Inc. v.*

*Port of Seattle*, 124 Wn. App. 5, 14, 98 P.3d 491 (2005) (negligent misrepresentation).  The

Estate's claims rest on the premise that Genworth either actively misled Felts or failed to

disclose material information about the LOSPIAs.  As the evidence developed in this action

shows, these allegations have no basis in fact; they are, to put it simply, made up.

In particular, the Estate cannot present any evidence that Felts saw or relied on any

representation, marketing material, or statement generated by Genworth in deciding whether

to purchase LOSPIAs – other than one illustration that Reese provided, accurately showing

the payments he would receive.  Genworth does not market annuities directly to the public.

Layton Decl. ¶ 4(d).  Stern has testified without contradiction that he never disseminated any

Genworth marketing materials.  Stern Decl. ¶ 10; Stern Dep. 135:15-136:2.  Genworth's

contracts (in a form approved by the Washington OIC) disclosed that they would pay only

during Felts' life and gave him 20 days from delivery to cancel at no charge.  Second Layton

Decl. ¶ 4, Exs. C-G.  Ms. Charles, the Estate's Personal Representative, admits that she does

not know the circumstances of any of Felts' transactions.  Charles Dep. 61:12-62:6.  Indeed,

Ms. Charles admitted that she does not know what was disclosed or stated to Felts when he

bought these annuities, but offers only speculation that he must have lacked understanding

because he decided to maximize his own income without regard to his Estate.  *Id.* 134:2-

135:5, 146:22-147:13, 148:11-149:2, 186:7-187:21.  Ms. Charles never heard her father

complain about any financial advice he was receiving, about Genworth or about his annuities.

*Id.* 75:15-76:3.  The Estate admits that Felts got what *he* wanted, even if not what the Estate

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 14
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1   wanted.  *Id.* 117:13-17.  And the only Genworth marketing materials to which the Estate has

2   referred were actually created *after* Felts died.  Layton Decl. ¶ 18.

3         Moreover, the Estate concedes that Felts knew or had access to whatever information

4   he needed to make decisions on his annuity purchases.  Ms. Charles admits that Felts knew

5   what an actuarial table was and knew how to obtain one if he so desired.  Charles Dep. 137:7-

6   15.  She admits that Felts "would study on his own," "thought he knew … everything he

7   needed to know to make … financial decisions," and in any event would never have taken

8   financial advice from anyone.  *Id.* 74:11-75:3; 39:1-4.  Further, Felts received a publication

9   called the "Annuity Shopper" from Stern, which included information about annuities,

10  including actuarial tables.  Stern Dep. 121:16-122:25; Stern Decl. ¶ 10; Shearer Decl., Ex. M.

11        In short, the Estate cannot present any evidence that Genworth or Reese did or said

12  anything that was legally "wrong."  They simply sold legal products to a willing purchaser

13  who knew what he was buying.  The Court should grant Genworth and Reese summary

14  judgment because the Estate cannot present evidence "sufficient to establish the existence" of

15  any legal wrong, which is "an element essential to that party's case, and on which that party

16  will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

17   **C.   The Court Should Grant Summary Judgment Because the Estate**
      **Concedes Felts Bought What He Wanted, Thus Defeating the Causation**
18    **Element of Each of His Claims.**

19        The concept of "causation" lies at the heart of the common law tort regime and forms

20  the core of private rights of action under tort-like statutory schemes, including the

21  Washington CPA and Criminal Profiteering Act.  The Estate's inability to demonstrate

22  causation also is fatal to each of its claims.

23        Each of the Estate's claims requires some showing of causation: it must show that

24  Genworth and Reese's supposed deceptive practices caused Felts to misunderstand the

25  annuities and thus suffer a monetary loss.  *See, e.g., Indoor Billboard*, 162 Wn.2d at 74

26  (Washington CPA requires showing of causal link between deceptive act and injury); *Tank v.*

27  *State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394, 715 P.2d 1133 (1986) (Insurance Code

actionable through CPA; thus, requires causation); *Crowe*, 134 Wn.2d at 514 (negligence requires showing of proximate cause); *Bailie Commc'ns, Ltd. v. Trend Bus. Sys. Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991) (unjust enrichment claim requires proof that inequitable conduct under the circumstances caused enrichment); *Seattle Prof. Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 832, 991 P.2d 1126 ("The rationale behind [the doctrine of mistake] is that, but for the mistake, the parties would have executed the reformed contracts."); RCW 9A.56.010(4) (theft by deception under Washington Criminal Profiteering Act requires showing that deception caused injury).  Again, the Estate must prove causation through clear, cogent and convincing evidence to succeed on its misrepresentation claims.  *Stiley v. Block*, 130 Wn.2d at 505 (fraud); *Elliott Bay Seafoods*, 124 Wn. App. at 14 (negligent misrepresentation).

Proximate causation involves two elements, i.e., "cause in fact" and "legal causation," and plaintiff must prove each.  *Ang v. Martin*, 154 Wn.2d 477, 482, 114 P.3d 637 (2005). "Cause in fact, or 'but for' causation, refers to 'the physical connection between an act and an injury.'"  *Id.* (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)).  Legal causation "involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact."  *Id.* (quoting *Hartley*, 103 Wn.2d at 779).  The Estate cannot produce evidence sufficient to prove either element.

### 1.    The Estate Cannot Present Evidence of "but for" Causation.

Where a plaintiff concedes that an alleged misrepresentation played no role in its purchasing decisions, the plaintiff cannot establish "but for" causation.  *Crane & Crane, Inc. v. C&D Elec., Inc.,* 37 Wn. App. 560, 563, 683 P.2d 1103 (1984) (plaintiff could not show causation as a matter of law where it hired the defendant ***not*** as a result of its misleading statements, but instead "because that was the electrical shop usually called"); Restatement (Second) Torts § 546 ("The maker of a fraudulent misrepresentation is subject to liability … if [plaintiff's] reliance is a substantial factor in determining the course of conduct that results in [plaintiff's] loss.").  Proof of "but for" causation in a claim of an alleged failure to disclose

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 16
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

material facts requires the plaintiff to prove that she would have acted differently had she timely received the information.  *See, e.g., Washington State Physician Ins. Exchange & Ass'n v. Fisons Corp.,* 122 Wn.2d 299, 314-15, 858 P.2d 1054 (1993) (plaintiff physician offered corroborated testimony that he would not have prescribed drug if he had known information withheld by drug manufacturer); *Smith v. Preston Gates Ellis LLP*, 135 Wn. App. 859, 864-65, 147 P.3d 600 (2006) (affirming summary judgment where plaintiff failed to show that but for alleged omissions plaintiff would not have entered contract); *Sheldon v. Am. States Preferred Ins. Co.*, 123 Wn. App. 12, 18, 95 P.3d 391 (2004) ("[W]e cannot agree with Sheldon's contention that a violation causing no harm to policyholders must result in forfeiture of an otherwise legal and reasonable fee.").  Thus, whether its claim rests on alleged misstatements or alleged omissions, the Estate must establish that "but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred." *Indoor Billboard*, 162 Wn.2d at 82 (citing WPI 15.01).

The Court may determine "but for" causation as a matter of law on summary judgment where "reasonable minds could not differ." *Smith*, 135 Wn. App. at 864 (quotation omitted); *see also Hartley*, 103 Wn.2d at 778-79 (if harm would have occurred even if defendant had discharged its duty, no cause in fact as a matter of law).  This is such a case.

The undisputed evidence (including Ms. Charles's concessions during her deposition) shows that Felts knew what he wanted and got what he bargained for.  No evidence suggests that he relied on (or even saw) anything said by Genworth or Reese before he made his purchases, and Ms. Charles has testified that he would have ignored any information that Genworth or Reese might have provided.  Thus, even if the Estate could show that Genworth or Reese failed to disclose something they should have disclosed (which, in fact, it cannot), it made no difference: Felts knew that he wanted LOSPIAs.  Because the Estate cannot show that he would have wanted anything different but for something Genworth disclosed or might have disclosed—i.e., because it cannot show that Felts would ***not*** have purchased these annuities if he had different information—the Estate's claims fail as a matter of law.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 17
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 2.   The Estate Cannot Demonstrate Legal Causation.

Even if there were a question of fact about the "but for" causation in any of the Estate's claims, the Estate could not satisfy legal causation.  Legal causation presents a question of law.  *Ang*, 154 Wn.2d at 482.  This determination depends on "mixed considerations of logic, common sense, justice, policy, and precedent."  *Hartley*, 103 Wn.2d at 779 (quoting *King v. Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).  Legal causation requires some "direct contact or special relationship between the defendant and the injured party" or some statutory duty that the defendant owed to the injured party.  *Id.* at 784.

Here, Genworth did not have contact with Felts as to four of the annuities, except for its receipt of application information in which Felt emphasized his undisputed intention to purchase LOSPIAs (and his understanding of the consequences of the purchase, both for himself and his heirs).  Felts dealt exclusively with Stern for those four annuities, as he did with dozens of others.  Stern's involvement severs any causal link between Genworth and Felts for those four annuities.  Stated differently, the connection between Genworth and Felts is too remote as a matter of law to satisfy legal causation.  *See Schmidt v. Cornerstone Investments, Inc.*, 115 Wn.2d 148, 165, 795 P.2d 1143 (1990) (affirming directed verdict for defendant who was not involved in marketing or soliciting investment); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 792-93, 719 P.2d 531 (1986) (noting that remoteness can break causal chain for CPA claim).

Moreover, as to all five annuities, Felts did not have any "special relationship" with Genworth or Reese such that Genworth or Reese owed Felts, a retired insurance agent, any heightened duty to make sure he understood the plain words of the applications, acknowledgement forms, and annuity contracts.  Felts entered into arms' length transactions with Genworth.  He did not seek or obtain financial advice from Genworth or Reese.  He executed an acknowledgement for each SPIA, emphasizing his awareness that the SPIA would pay out only during his lifetime.  *See* Layton Decl., Ex. D; Second Layton Decl., Ex. A.  Washington law did not impose on Genworth a special duty to do anything more.  *See*

*Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 732, 853 P.2d 913 (1992) ("Some type of special relationship must exist before the duty [to disclose] will arise.").

Other courts in this Circuit have rejected claims resembling those asserted here, applying legal causation principles. Most notably, in *Sipes v. Equitable Life Assur. Soc.*, 1996 WL 507308, *3-4 (N.D. Cal. Aug. 13, 1996), the personal representative of a woman who had purchased "eight life annuities for a total purchase price of $594,815.07" over a four-year period while in her 80's sued, alleging 11 causes of action similar to the Estate's claims here. The court, however, granted summary judgment dismissing all 11 claims. In so doing, the court **rejected** the theory on which the Estate relies, i.e., "that defendants had a duty to inform [the decedent] that it would be highly unlikely that she would ever realize a payout on her life annuities equal to, or even approximating, her initial purchase price." *Id.* at *3. Absent such a duty (which court after court has rejected, in various forms, for more than a hundred years), the Estate cannot show that Genworth or Reese's conduct was the legal cause of Felts' loss (if, indeed, he suffered a legally cognizable loss at all).

Legal causation keeps liability within reasonable bounds and prevents it from spiraling out of control. *Kim v. Budget Rent-a-Car Sys., Inc.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001) ("Legal causation … is grounded in policy determinations as to how far the consequences of a defendant's acts should extend.") (quotation omitted). Finding liability here, where a former insurance salesman went out of his way to show that he knew what he was doing, would expand proximate causation beyond recognizable bounds.

### D. Leaving Aside Issues of Causation, the Court Should Grant Summary Judgment Based on Other Deficiencies in the Estate's Claims.

In addition to the Estate's inability to prove that Genworth and Reese committed any legal wrongs or that they caused Felts any injury, each of its claims suffers separate legal infirmities that warrant summary judgment in favor of Genworth and Reese.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 19
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 1. Because the OIC Has Approved Genworth's Sale of Life-Only Annuities, the Estate's Statutory Claims Are Barred.

The Washington CPA provides that "nothing … permitted to be done pursuant to [the Insurance Code] shall be construed to be a violation of [the Consumer Protection Act]." *See* RCW 19.86.170. Here, the Washington OIC, acting pursuant to the Insurance Code, permitted Genworth to use its contract forms to sell LOSPIAs to people up to 100 years old. Layton Decl. ¶ 12. *See* RCW 48.18.100 (requiring contract and application forms to be "filed and approved" by OIC, after which forms "may be used by the insurer"); WAC 284-58-140(9) (referring to contract form filings for "single premium … immediate annuities"). As a matter of law, then, the sale of life-only annuities to Felts pursuant to the approved contract and application forms could not violate the CPA. Because the Estate's claim for alleged violation of the insurance code is actionable only through the CPA, *e.g., Tank*, 105 Wn.2d 381 at 394, that claim is equally barred.[4]

### 2. The Contractual Allocation of Risk Bars the Mistake Claim

The Estate claims it can rescind because Felts operated under a mistake of fact when he bought the annuities. A party seeking to avoid a contract for mistake "must not have borne the risk of the mistake." *Pub. Util. Dist. No. 1 of Lewis Cty. v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 362, 705 P.2d 1195 (1985). A party to a contract bears the risk of mistake "when, at the time the contract is made, the party is aware of limited knowledge with respect to the facts to which the mistake relates but treats such limited knowledge as sufficient." *Id.*

Even if the Estate could present evidence suggesting that Felts had a mistake of fact when he purchased these annuities (which it cannot), Felts bore the risk of being mistaken. In refusing to set aside a LOSPIA based on an estate's claim that a decedent was mistaken as to her latent cancer, the California Court of Appeals explained just a few weeks ago:

---

[4] In prior briefing, the Estate relied on supposedly deceptive sales practices to assert a claim for violation of the Insurance Code (and, by extension, a violation of the CPA). *See* Opp. to MTD [Dkt. No. 22] (Nov. 27, 2006) at 7-8. In that respect, the Estate's claim adds nothing to its claims for misrepresentation. As explained in Sections III.B and III.D.6, Genworth and Reese are entitled to judgment as a matter of law on any claim sounding in misrepresentation, as the Estate cannot show that (a) Felts read or saw any misleading information attributable to Genworth or Reese, and (b) in any event, it cannot show that any such information caused Felts any actionable damage or loss.

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 20
DWT 11169390v8 0081972-000001

[P]arties who contract for "life contingent" benefits necessarily do so based on limited knowledge of the facts about which [plaintiff] was mistaken.  We cannot fix the length of our lives or even the state of our health with certainty, and the parties knew that their expectations in this regard were at best an educated guess.  Indeed, life annuity contracts are read "in the light of the knowledge of all mankind, that death may come tomorrow."

*Grenall*, 2008 Cal. App. LEXIS 1148, at *9-10 (quoting *Rishel*, 78 F.2d at 883).  Felts

likewise assumed the contractual risk that he might die before he received payments equal to

(or exceeding) his premium.  Under Washington law, Felts thus bore the risk of a mistake.

### 3.   Because Felts Received What He Contracted For, the Estate Cannot Recover on its Criminal Profiteering Claim.

To succeed on its claim under Washington's criminal profiteering statute, RCW

9A.82.100, the Estate must prove that Genworth committed first degree theft "for financial

gain" (RCW 9A.82.010), and through means of deception.  RCW 9A.56.020.  But where each

party to a transaction receives what it bargained for, there can be no theft.  *State v. Lee*, 128

Wn.2d 151, 163, 904 P.2d 1143 (1995).  Here, Felts bargained for periodic payments for the

remainder of his life in exchange for payment of a single premium; he received exactly that.

Because the Estate concedes that Genworth paid what it promised under the terms of the

SPIA, and that it did not make any false statements about the payments it would (and did)

make, the Estate cannot recover under the profiteering statute.

### 4.   The Express Contracts Bar the Unjust Enrichment Claim.

Washington courts long have held that a plaintiff may not pursue an unjust enrichment

claim where there is a valid contract between the parties relating to the same matter:

A party to a valid express contract is bound by the provisions of that contract and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.

*Chandler v. Wash. Toll Bridge Auth.,* 17 Wn.2d 591, 604, 137 P.2d 97 (1943); *see also United*

*States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.,* 290 F.3d 1199, 1204 (9th Cir. 2002)

(affirming dismissal of unjust enrichment claim in face of valid contract); *MacDonald v.*

*Hayner,* 43 Wn. App. 81, 85-86, 715 P.2d 519 (1986) (same).  The Estate's unjust enrichment

claim seeks to re-adjust the rights and obligations to which the parties agreed in the five

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

annuity contracts.  Under Washington law, an unjust enrichment claim cannot be used to re-negotiate a contract.

### 5. The Economic Loss Rule Bars Negligence and Negligent Misrepresentation Claims.

The Washington Supreme Court has drawn a "bright line distinction between the remedies offered in contract and tort with respect to economic damages." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1,* 124 Wn.2d 816, 827, 881 P.2d 986 (1994).  The "economic loss rule" enforces that distinction; it "bar[s] recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses." *Alejandre v. Bull*, 159 Wn.2d 674, 682-83, 153 P.3d 864 (2007).  "If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims." *Id.*  The rule applies to negligent misrepresentation claims, such as the claim plaintiff asserts here. *Id.* at 686 (affirming dismissal of negligent misrepresentation claim).

Express written contracts governed the relationship between Genworth and Felts, and those contracts allocated to Felts the risk that he would not outlive his assets—indeed, that was their purpose. *See Grenall*, 2008 Cal. App. LEXIS 1148 at *1-*3 (allocations of risk "are an inherent part of life annuity contracts").  The Estate claims only economic injury, i.e., the money Felts paid in purchasing LOSPIAs.  Under the economic loss doctrine, the Estate cannot recover economic losses on its claims of negligence and negligent misrepresentation.

### 6. The Estate Cannot Raise an Issue of Material Fact as to Whether Felts Relied on Something that Genworth Said, Which Bars the Misrepresentation and Profiteering Claims.

The Estate's misrepresentation claim, as well as its claim under the Criminal Profiteering Act, each require proof of reliance. *Stiley v. Block*, 130 Wn.2d 486, 505 (1996) (reliance element of misrepresentation claim); *State v. Casey*, 81 Wn. App. 524, 528, 915 P.2d 587 (1996) (reliance element of crime of theft by deception, predicate act for profiteering claim).  But the Estate cannot prove that Felts saw, much less that he relied on, anything that

GENWORTH'S MOTION FOR SUMMARY JUDGMENT (C06-1419 RAJ) — 22
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Genworth or Reese said.  To the contrary, Ms. Charles admitted that Felts was fiercely independent and did not rely on anyone.  That concession bars these claims.

**7.    The Relevant Statutes of Limitations Bar Action on Several of These Annuities.**

Finally, apart from the substantive deficiencies in the Estate's claims, the applicable limitations periods bar most of the relief sought in this action.

The statute of limitations for claims under the CPA (including claims for violation of the Insurance Code) is four years.  RCW 19.86.120.  The statute of limitations for all of the Estate's other claims is three years.  RCW 4.16.080.  The Estate filed suit on June 22, 2006.  Because Felts purchased two of the annuities at issue (#YGEC101888 and #3856746) more than four years before this action was commenced, all claims on those annuities are time-barred.  In addition, because Felts purchased two more annuities (#3864923 and #3867121) more than three years before the Estate sued, all but the CPA claims on those annuities are time barred.  Only one annuity (#3869052), in which Reese played no role, faces no statute of limitations issue.

## IV.    CONCLUSION

Genworth and Reese respectfully request that the Court grant summary judgment in their favor, dismissing the Estate's claims in their entirety and with prejudice.

DATED this 15th day of August, 2008.

<div style="margin-left:40%">

Davis Wright Tremaine LLP
Attorneys for Defendants Genworth Life
Insurance Company and Jeffery Reese

By  */s/ Charles S. Wright*
Stephen M. Rummage, WSBA#11168
Charles S. Wright, WSBA #31940
Darcy W. Shearer WSBA # 38992
1201 Third Avenue, Suite 2200
Seattle, WA  98101-1688
Telephone:  (206) 622-3150
Fax:  (206) 757- 7700
E-mail:  steverummage@dwt.com
            charleswright@dwt.com
            darcyWright@dwt.com

</div>

GENWORTH'S MOTION FOR SUMMARY JUDGMENT
(C06-1419 RAJ) — 23
DWT 11169390v8 0081972-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify that on August 15, 2008, I presented the foregoing *Genworth Life*

4   *Insurance Company's and Jeffrey Reese's Motion for Summary Judgment* to the Court for

5   filing and uploading to the CM/ECF system which will send notification of such filing to the

6   following persons:

7          Patrick L. Hinton:              phl@ltol.com
8          Richard Lawrence Martens:       rmartens@martenslegal.com
           Mark David Roth:                mroth@golbeckroth.com
9          Steven A Stolle:                sstolle@martenslegal.com

10         DATED this 15th day of August, 2008.

11                                          Davis Wright Tremaine LLP
                                            *Attorneys for Genworth Life Insurance Co.*
12                                            *and Jeffrey Reese*

13

14                                     By */s/ Charles S. Wright*
                                            Charles S. Wright, WSBA #31940
15                                          Davis Wright Tremaine LLP
                                            Suite 2200
16                                          1201 Third Avenue
                                            Seattle, WA 98101-3045
17                                          Telephone:  (206) 757-8175
                                            Fax:  (206) 757-7175
18                                          E-mail:  charleswright@dwt.com

19

20

21

22

23

24

25

26

27