THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10
11
12

ESTATE OF ROBERT FELTS, etc.        )   Case No. 06-1419-RAJ
                                    )
13          Plaintiffs,             )   **DEFENDANT HERSH L. STERN'S**
                                    )   **MOTION FOR SUMMARY**
14   v.                             )   **JUDGMENT OR, ALTERNATIVELY,**
                                    )   **FOR SUMMARY ADJUDICATION**
15                                  )
                                    )
16   GENWORTH LIFE INSURANCE         )
     COMPANIES, etc, et al,          )   Noted on Motion Calendar :
17                                  )
                                    )
18          Defendants.             )        September 12, 2008
     _____)
19                                      ORAL ARGUMENT REQUESTED
20
21
22
23
24
25
26
27   **DEFENDANT HERSH L. STERN'S**
     **MOTION FOR SUMMARY JUDGMENT,**
28   **ETC.**

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

# TABLE OF CONTENTS

1.   Introduction....................................................................................................1

2.   Statement of Facts...........................................................................................2

    A.   Defendant Hersh Stern ...........................................................................2

    B.   Robert S. Felts.......................................................................................3

    C.   The Disputed Transactions .....................................................................6

3.   Legal Discussion.............................................................................................7

    A.  Mr. Felts Was Not The Victim Of A Constructive Fraud ...........................................8

    B.  Mr. Felts Was Not Mistaken Regarding Any Fact Material To The Transactions ...................................................................................9

    C.  Stern Breached No Duty Of Care To Mr. Felts.........................................10

        i.  The Authorities Relied On By Plaintiff To Establish A Standard Of Care Do Not Apply To The Transactions At Issue ....................................................10

        ii.  Stern's Conduct In Consistent With The Model Regulation Requirements.....................................................................12

    D.  Stern Is Not Liable For Negligent Or Intentional Misrepresentation.........................13

        i.  Stern Owed No Duty To Disclose The Matters Alleged.....................................13

        ii.  Stern Disclosed The Life Expectancy Data And Did Not Cause Felts Any Damage..................................................................14

    E.  Incorporation By Reference.........................................................................15

    F.  There Are No Grounds Upon Which To Base Any Injunctive Relief.........................15

4.   Conclusion....................................................................................................15

**DEFENDANT HERSH L. STERN'S MOTION FOR SUMMARY JUDGMENT, ETC.**

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Rules**

3

FRCP Rule 56.............................................................................................................. 7

4

5

**Federal Cases**

6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 254 (1986)..................................................................................... 8

7

8

**State Cases**

9

*Colonial Imports v. Carlton Northwest*,
   121 Wn.2d 726, 732 (1993)................................................................................ 14

10

*Christensen v. Royal Sch. Dist.*,
   156 Wn.2d 62 (2005)......................................................................................... 11

11

12

*Green v. McAllister*,
   103 Wn. App. 452, 468 (2000)........................................................................... 8

13

*Huberdeau v. Desmarais*,
   79 Wn.2d 432, 440 (1971)................................................................................... 8

14

15

*Lambert v. State Farm Mut. Auto.*,
   2 Wn. App. 136, 140 -141 (1970)....................................................................... 9

16

*Ross v. Kirner*,
   162 Wn.2d 493, 499-500 (2007)........................................................................13

17

18

*Snap-on Tools Corp. v. Roberts*,
   35 Wn. App. 32, 34-35 (1983)........................................................................... 9

19

*Stiley v. Block*,
   130 Wn.2d 486, 505 (1996)............................................................................... 13

20

21

*Super Valu Stores v. Loveless*,
   5 Wn. App. 551 (1971)...................................................................................... 9

22

*///*

23

*///*

24

*///*

25

*///*

26

27

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC.**

28

**Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026**

**State Regulations**

WAC 284-23-300, et seq...........................................................................................................12

WAC 284-23-320(3)(b)............................................................................................................12

**Miscellaneous**

Senior Protection in Annuity Transactions Model Regulation ................................................... 11

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC.**

**Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026**

1. **Introduction.**

The transactions of which the plaintiff Estate of Robert S. Felts (the "Estate") complains were the product of an idea conceived and executed by Mr. Felts alone with no input or inducement from defendant Hersh Stern, who merely provided Mr. Felts with rate quotations and market access.  There are no facts to indicate that Mr. Felts was deceived or somehow did not understand the transactions; to the contrary, the evidence is overwhelming that Mr. Felts knew exactly what annuity products he wished to purchase, understood their features and proceeded with the purchases with full knowledge.  Thus, it cannot be said that Stern was unjustly enriched or that the consideration received by Mr. Felts was so inadequate as to be constructively fraudulent (1st claim for relief) or that Mr. Felts suffered from any unilateral mistake of fact of which Stern was aware to justify rescission (2nd claim).  As a matter of law, Stern owed Mr. Felts no duty to conduct a suitability review (3rd claim), owed no duty of disclosure and otherwise made no fraudulent or negligent misrepresentations or omissions of material facts (4th claim).  There is no evidence that Stern violated any provision of the Washington insurance code (5th claim), engaged in any deceptive acts which led to the Estate's damage and violated the consumer protection act (6th claim) or committed criminal profiteering (7th claim for relief).  Given the above, there are no grounds for the Estate to seek the remedy of injunctive relief (8th claim).  Defendants Hersh Stern and ImmediateAnnuities.com (collectively "Stern") are entitled to summary judgment on each claim for relief in the third amended complaint (the "Complaint") because under the undisputed facts of this case, Stern is entitled to judgment as a matter of law.

In the event that the Court finds that summary judgment on the entire Complaint is not appropriate, Stern requests that the Court order summary adjudication of each claim for which it finds that the material facts are not in dispute and Stern is entitled to judgment as a matter of law.

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC. –** Page 1

**Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026**

2. **Statement of Facts.**[1]

**A. Defendant Hersh Stern.**

Stern represents a number of insurers who offer single premium immediate annuities ("SPIAs"), including defendant Genworth Life Insurance Company ("Genworth").  (Stern Dec. No. 8.)[2]  Stern's main business activities are to provide a comparison shopping service for annuities on the internet and to publish, since 1986, a semi-annual newsletter called the Annuity Shopper (fka The Annuity & Life Insurance Shopper).  (*Id.*)  He owns the web address "www.immediateannuities.com" and conducts his business on the internet, by mail and phone.[3]  (*Id.*)  Other than listing his service with Google and Yahoo, Stern does not advertise his services in any way and depends largely on word of mouth and unpaid mention in various financial magazines to inform prospective customers about his service.  (Stern Dec. No. 10.)

Through Stern's website and publication, consumers and insurance professionals can obtain pricing information for a variety of fixed annuity products issued by a number of insurers whom Stern represents.  (Stern Decl. No. 10.)  During the time at issue in this proceeding, the website and Annuity Shopper also contained life expectancy tables published by the Department of Treasury as well as the Annuity 2000 table adopted by many different state regulatory

---

[1]In a quest for brevity, Stern and Genworth have coordinated their briefs for this motion and Stern will endeavor here to only address facts and evidence unique to his position or otherwise not addressed in Genworth's brief.  Accordingly, Stern incorporates Genworth's Motion for Summary Judgment and supporting evidence, filed on this same date, by reference.

[2]In a further effort to reduce the burden on the Court's file and eliminate redundant evidence, Stern will use his best efforts to rely on evidence already before the Court in the context of the Estate's motion for class certification.  Accordingly, references to the Stern Declaration and exhibits shall mean the Declaration of Hersh Stern In Support Of Opposition To Motion To Certify Class filed in this action on January 22, 2008.  References to the concurrently filed Supplemental Declaration of Hersh Stern and exhibits will be so noted.

[3]Despite Immediateannuities.com being named as a defendant, it is merely a web-address and is not a business entity of any type.

**DEFENDANT HERSH L. STERN'S MOTION FOR SUMMARY JUDGMENT, ETC. – Page 2**

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

1  agencies. (Stern Decl. No. 10; Exhs. C and D.)   The Annuity Shopper publication (along with its

2  mortality tables) is, and at the relevant times was, sent to each prospective customer along with

3  requested quotes and was sent to every past Stern customer, including Mr. Felts, as a matter of

4  course and practice.  (Stern Depo., pp.120:19–121:22, 122:6-14.)[4]

5       Stern is not a financial planner, does not represent himself as a financial planner and does

6  not provide any financial planning services.  (Stern Decl. No. 9.)  He does not recommend one

7  type of financial product or insurer over another, does not recommend particular products to fill

8  particular needs, and does not discuss investment strategies with customers and prospective

9  customers.  (*Id*.)   To the contrary, his service simply provides consumers and insurance

10  professionals access to pricing information for and market access to the consumer/professional

11  selected products of the many insurers Stern represents.  (*Id*.)

12       Consistent with this practice, Stern never solicited Mr. Felts to make any annuity

13  purchase.  (Supp. Stern Decl. No. 2.)  Stern never offered Mr. Felts any advice or

14  recommendations regarding his annuity purchasing strategy or the insurers from whom to

15  purchase annuities (*Id*.)  In fact, Stern never provided other advice or recommendations of any

16  sort regarding Mr. Felts' purchases.  (*Id*.)  Stern simply provided Mr. Felts with annuity pricing

17  information for the products Mr. Felts himself selected and then provided market access for Mr.

18  Felts to make purchases once he decided for himself that he wished to do so.  (*Id*.)

19       **B.  Robert S. Felts.**

20       In life, Mr. Felts was a career insurance salesman who, even into his 90's, represented

21  himself as an insurance industry insider, a licensed insurance agent, retirement planner, "lifetime

22  member of the Million Dollar Roundtable" (an organization of elite insurance producers

23  compromising less than 5% of the insurance producers worldwide), and a representative of

24

25       [4]The transcript of Stern's deposition was filed as Exhibit C to the Declaration of Steven
26  A. Stolle in Support of Plaintiff's Motion to Certify Class, filed in this proceeding on December
   26, 2007.

27  **DEFENDANT HERSH L. STERN'S**                          Golbeck Roth PLLC
                                                            **1200 Fifth Avenue**
28  **MOTION FOR SUMMARY JUDGMENT,**                        **Suite 1900**
   **ETC. –** Page 3                                       **Seattle, Washington 98101**
                                                            **206 467-7026**

1  "Sunshine Financial Services" and "Sunshine Insurance Services."[5]  (Stern Decl. No. 19, Exh.

2  H.)

3       Over the years from 1969 until his death in 2004, Mr. Felts purchased at least 126 single

4  premium immediate annuities ("SPIAs"), including Term Certain, Life Only, Life with Period

5  Certain, Joint with Survivor Benefits and Life with Refund Option.  (Stern Dec. No. 21; Exh. J.)[6]

6  Included in this number were at least 27 Life Only annuities issued after Mr. Felts reached the

7  age of 85, the age at which point the Estate contends that Mr. Felts needed heightened

8  protection.  (*Id*.)  Of these many annuities, 67 were purchased through Stern.  (*Id*.)

9       In making his annuity purchases, Mr. Felts unquestionably employed his extensive

10  knowledge of the insurance industry in general and annuity purchases in particular, performing

11  for himself many of the functions ordinarily fulfilled by an agent.  (Stern Decl. No. 22.)  Mr.

12  Felts often would contact insurance companies on his own in order to directly solicit quotes and

13  applications.  (*Id*.)  Mr. Felts completed applications at home on his typewriter, contacted

14  annuity underwriting and issue departments directly to change the amount of premium sent under

15  earlier applications and to follow up on applications which he had sent directly to the issuer.

16  (*Id*.)  He occasionally requested Stern to provide him with pre-signed, blank forms so that he

17  could transact business with the insurance companies directly, independent of Stern's office.

18  (*Id*.)

19

20  _____

21       [5]Based on his represented status as a licensed agent, Mr. Felts asked Stern to pay him the
22  customary 3% writing agent's commission on his own transactions. (Stern Decl. No. 22.)  As a
    professional courtesy to a fellow insurance agent, Stern agreed, foregoing three-fourths of the
23  4% commission he would otherwise receive on Mr. Felts' annuity purchases.  (*Id*.)  The
    documents produced by the Estate confirm that Mr. Felts had similar discussions with the other
24  agents with whom he worked.  (Supp. Hinton Decl. No. 2, Exh. P.)

25
        [6] In fact, the evidence produced by the Estate seems to indicate that Mr. Felts may have
26  purchased as many as 131 annuities or more over the course of his life. (Exh. J)

27  **DEFENDANT HERSH L. STERN'S**                    **Golbeck Roth PLLC**
                                                        **1200 Fifth Avenue**
28  **MOTION FOR SUMMARY JUDGMENT,**                        **Suite 1900**
    **ETC. –** Page 4                              **Seattle, Washington 98101**
                                                        **206 467-7026**

1    Mr. Felts felt completely comfortable and confident in making his own financial

2  decisions and eschewed advice from those financial planners and agents who offered it to him.

3  In one of several examples of this disposition, Mr. Felts explained in a August 2, 2003 letter to

4  Genworth:

5           …once or twice I've just bought from a co. direct because I don't
          want any agent to tell me what I need altho [sic] it is always good
6           to hear their opinions if only ½ my age at 94 yrs.

7  (Stern Dec. No. 19; Exh. N.)  Indeed, Mr. Felts' daughter and personal representative Susan

8  Charles testified her father was not prone to taking advice in financial affairs, explaining that " . .

9  . he thought he knew it, everything he needed to know to make decisions, financial decisions."

10  (Charles Depo., 74:15-17, 148:25-149:2.)[7]   This is consistent with Stern's experience with Mr.

11  Felts, who never sought Stern's guidance or advice in his annuity purchasing decisions and in

12  fact rebuffed Stern whenever their conversations touched on Mr. Felts' financial condition or

13  needs.  (Stern Decl. No. 24.)

14    Mr. Felts had other commercial endeavors in his later years in addition to purchasing

15  annuities.  In a letter Mr. Felts wrote to his children in November, 2003 he explained that since

16  Ms. Felts death in 2002, he was "free to 'run rabbit run' in commercial projects darling Jenny

17  never wanted to approve."  Mr. Felts explained that one month after Mrs. Felts death, he had

18  mortgaged the property to purchase more annuities ". . . because of a 20 to 25% Hi return at my

19  advanced senior age of 92 years."[8]  (Supp. Hinton Decl. No. 3; Supp. Exh. Q.)  Mr. Felts further

20  explained that he was using the proceeds of the annuities to purchase the mobile home trust

21  deeds for himself *and for them*, claiming to receive 24% return per year on the notes.  (*Id*.)  Mrs.

22

23

24       [7]The transcript of Stern's deposition was filed as Exhibit C to the Declaration of Darcy
    Shearer in Opposition to Plaintiff's Motion for Class Certification, filed in this proceeding on
25  January 22, 2008.

26       [8]Stern was not aware of the mortgage loan or the trust deed investments until after Mr.
    Felts' death. (Stern Dec. No. 28.)
27
    **DEFENDANT HERSH L. STERN'S**                    **Golbeck Roth PLLC**
28  **MOTION FOR SUMMARY JUDGMENT,**                  **1200 Fifth Avenue**
                                                       **Suite 1900**
    **ETC. –** Page 5                                 **Seattle, Washington 98101**
                                                       **206 467-7026**

1   Charles testified that she had seen this letter prior to Mr. Felts' death and yet did nothing to deter

2   any of her father's investment activity.  (Charles Depo., 143:19-144:24.)

3          **C. The Disputed Transactions**.

4          Upon Mrs. Felts' death in early 2002, Mr. Felts lost the income he was accustomed to

5   receiving from the annuities based on her life and from those which they jointly owned, many of

6   which reduced to 50% or 67% of their original levels upon the death of the first annuitant.

7   (Stern Dec. No. 27.)   Accordingly, he determined to replace that income through additional

8   SPIA purchases, several for his life alone without refund to beneficiaries in order to maximize

9   the income he received for the premium he paid.  (*Id*.)  With the exception of the one Life Only

10  SPIA purchased in 2001, these purchases include those of which the Estate now complains.[9]

11         At or about this same time, in spring 2002, Mr. Felts refinanced his home as referenced in

12  November 2003 letter, extracting some $181,000 equity as cash. (Comp., ¶ 2.18.)   Claiming that

13  the loan was made to fund annuity purchases and attempting to characterize this as evidence of

14  over-reaching by defendants, the Estate alleges that defendants either persuaded Mr. Felts to take

15  out the loan to fund annuity purchases or knew of the loan and failed to advise Mr. Felts that

16  such a financing scheme was unsuitable.  (*Id*.)  Setting aside any dispute regarding the

17  suitability of using home equity funds to purchase annuities, the facts show that, contrary to the

18  Estate's overblown allegations, Stern had no knowledge of this loan.[10]

19  _____

20         [9]In addition to the five contracts contested here, Mr. Felts' 2002 and after purchases
    included a 10 Year Period Certain (July 2002 – $10,000 premium), two Life with 5 Years (July
21  2003 – $30,000 premium; June 2004 – $10,200 premium) and one Life Only (February 2004 –
22  $15,000 premium). (*See*, Exh. J.)   These annuities named the Estate's heirs as beneficiaries and,
    perhaps not surprisingly, the Estate does not contest these purchases.
23

24         [10]The technique of seniors converting equity from their residence's value into cash for
    living expenses and security, either through conventional "cash out" refinancing or reverse
25  mortgages, is certainly not new or improper.  However, such a transaction by itself creates a
    limited fund which one might outlive.  If instead the loan proceeds are used to purchase a fixed,
26  immediate annuities, a senior can create an inexhaustible income stream sufficient to service the
    mortgage debt and leave money left over for living expenses.  This strategy would be
27
    **DEFENDANT HERSH L. STERN'S**
28  **MOTION FOR SUMMARY JUDGMENT,**
    **ETC. –** Page 6

Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026

1    To demonstrate Stern's supposed knowledge, the Estate points to the annuity purchase

2    application Mr. Felts signed out on October 12, 2002 for annuity no. 386493.  Specifically, that

3    form contains a space for the applicant to identify its source of funds for the proposed purchase,

4    presumably for Genworth to determine whether the purchase money was qualified or non-

5    qualified and apply the appropriate tax treatment.  (Supp. Stern Decl. No. 3; Supp. Exh. R.)   Mr.

6    Felts inserted the words "Savings - or Bank loan" here, giving rise to plaintiff's contention that

7    Stern knew of the loan.  However, a careful review of the document shows that Stern's signature

8    was made on October 9, three days before Mr. Felts signed the application on October 12.

9    (Supp. Stern Decl. No. 3; Supp. Exh. S.)  At Mr. Felts' request, the application was pre-signed

10   by Stern and mailed to Mr. Felts for completion.  (*Id*.)  Once the application was completed, Mr.

11   Felts forwarded the application directly to Genworth.  (*Id*.)  Stern remained unaware of the loan

12   until after Mr. Felts' death.  (*Id*.)

13   Despite the artful, overreaching rhetoric of the Complaint, the gist of the claim is that Mr.

14   Felts was sold Life Only products without disclosure of life expectancy information and that

15   these annuities were unsuitable for his financial condition and objectives.  As discussed below,

16   under the undisputed facts of this case, the Estate's claims have no merit and Stern is entitled to

17   judgment as a matter of law.

18   **3. Legal Discussion.**

19   FRCP Rule 56 provides in the relevant part the following:

20   (b)  A party against whom relief is sought may move at any time, with or without
     supporting affidavits, for summary judgment on all or part of the claim. . . .

21

22   (c) . . . The judgment sought should be rendered if the pleadings, the discovery
     and disclosure materials on file, and any affidavits show that there is no genuine
     issue as to any material fact and that the movant is entitled to judgment as a
23   matter of law.

24   (d) Case Not Fully Adjudicated on the Motion.

25

26   particularly appropriate for a senior who had already provided for his heirs to the extent he
     desired.

27   **DEFENDANT HERSH L. STERN'S**
     **MOTION FOR SUMMARY JUDGMENT,**
28   **ETC. –** Page 7

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

(1) Establishing Facts. If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue. The facts so specified must be treated as established in the action.

When evaluating the evidence under a summary judgment motion to determine whether a genuine question of fact exists, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). For instance, when confronted with a claim or defense requiring proof by clear and convincing evidence,

the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.

*Id* at 255-256.

**A.  Mr. Felts Was Not The Victim Of A Constructive Fraud.**

Although nominally captioned "Restitution and Unjust Enrichment – Rescission", the Estate's first claim appears to be grounded in constructive fraud. For instance, the Estate alleges at paragraph 4.4 of the Complaint that, in light of defendants alleged superior knowledge of annuities and Mr. Felts' health conditions, the benefits paid under the annuities at issue were "so inadequate as to be constructively fraudulent when compared to the amount of premium payment made . . ." and in paragraph 4.6 that the grounds for the requested relief is "defendant's constructively fraudulent conduct . . .."

"[C]ourts will not ordinarily undertake to weigh the consideration, for in the absence of undue influence or such gross inequality as to constitute a constructive fraud, the value or worth of the consideration should be left to the contracting parties." *Huberdeau v. Desmarais*, 79 Wn.2d 432, 440 (1971) Constructive fraud has been defined "as failure to perform an obligation, not by an honest mistake, but by some "interested or sinister motive." *Green v. McAllister*, 103 Wn. App. 452, 468 (2000)(*Citations omitted*).

**DEFENDANT HERSH L. STERN'S MOTION FOR SUMMARY JUDGMENT, ETC. –** Page 8

Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026

1    Here, Mr. Felts paid a specified premium ($141,420 with respect to the Stern annuities)

2    for the promise of the insurer to make specified payments until his death, a date which at the

3    time of contracting no living person knew with any degree of certainty.   Both parties to some

4    extent were exposed to monetary loss due to the contingent term of the contract and both parties

5    stood to gain.  Genworth did in fact make all promised payments to Mr. Felts during his life and

6    until his death, with Mr. Felts receiving some $66,839.07 in premium benefit.  Moreover, in life

7    Mr. Felts had the security of knowing he would never outlive the resources which he devoted to

8    the premium.  It cannot be said that this consideration was so grossly inadequate as to render the

9    contracts constructively fraudulent.  Stern is entitled to judgment as a matter of law on this first

10   claim for relief.

11   **B.  Mr. Felts Was Not Mistaken Regarding Any Fact Material To The
      Transactions.**

12   Plaintiff alleges in its second claim that Mr. Felts "held a basic assumption that . . .  he

13   would *likely* live long enough to receive at least full repayment of his premium through regular

14   periodic payments" of monthly benefits and that his belief was mistaken, as any reasonable

15   person would have concluded.  (Para. 5.2.)(*Emphasis added*.)

16   The rule for recovery for a unilateral mistake of fact was succinctly stated in *Snap-on*

17   *Tools Corp. v. Roberts*, 35 Wn. App. 32, 34-35 (1983), where the Court explained:

18
19           . . . a unilateral mistake of fact may be grounds for relief if the other party knows
             or is charged with knowing the mistake. . . . [citations omitted] No party may
20           retain money claiming ignorance of facts which are reasonably ascertainable and
             would alert that party to the mistake."

21   Where there is no mistake of *fact* but instead only failed expectations, no relief will be granted.

22   *Super Valu Stores v. Loveless*, 5 Wn. App. 551 (1971).  As stated in *Lambert v. State Farm Mut.*

23   *Auto*., 2 Wn. App. 136, 140 -141 (1970),

24           The mistake must relate to a past or present fact, material to the contract and not
25           to an opinion regarding future conditions as a result of present facts.  The mere
             fact that a bad bargain is made will not entitle the releasor to avoid his contract.
26           See the Restatement, Restitution § 11.

     Prognosis is not a fact. It is not capable of being determined with certainty. . . .

27   **DEFENDANT HERSH L. STERN'S**                          Golbeck Roth PLLC
28   **MOTION FOR SUMMARY JUDGMENT,**                        1200 Fifth Avenue
     **ETC. –** Page 9                                       Suite 1900
                                                             Seattle, Washington 98101
                                                             206 467-7026

1    The mistake claimed here is not one of fact at all.  Instead, the alleged mistake – Mr.

2  Felts' alleged belief that he would live sufficiently long to recover his premium – is more akin to

3  an opinion or prognosis rather than a fact which under ordinary circumstances can be determined

4  with any degree of certainty absent divine intervention.  In fact, the Estate seems to admit this in

5  the Complaint, characterizing the mistaken belief as "that he would *likely* live long enough" to

6  recover his premium, implicitly conceding the understanding that he might not do so.  *(Emphasis*

7  *added*.)  Because the alleged mistake was in actuality a failed expectation of future events, the

8  Estate cannot satisfy even the first inquiry necessary to establish a claim for mistake of fact.

9    Even if Mr. Felts were mistaken about some actual existing fact, the Estate still cannot

10  prevail on this claim.  First, there is no evidence that Stern was actually aware of the mistake at

11  the time of contracting or that he would somehow be charged with such knowledge.  Further, the

12  evidence is clear that when these annuities were purchased, Mr. Felts understood his mortality

13  and the fact that his estate stood to lose the premium dollars spent on the annuities should he not

14  live long enough to recover those amounts in premium.  Mr. Felts was not mistaken about any

15  fact which was material to these transactions and as such, Stern is entitled to summary judgment

16  on the Estate's second claim for relief.

17      **C. Stern Breached No Duty Of Care To Mr. Felts.**

18    The third claim for relief for negligence asserts the following:

19  Each defendant had a duty . . . to properly advise Robert S. Felts that . . . the SPIA
    products at issue were not suitable for him.  Each knew or should have known
20  that Mr. Felts intended to use borrowed funds to purchase [SPIAs] and knew or
    should have known about his state of health and had a duty to advise him that he
21  was unlikely to receive his money back.

22  (Comp., ¶ 6.2.)  Under the undisputed facts of this case, no such duty existed.

23      **i. The Authorities Relied On By Plaintiff To Establish A Standard Of Care
        Do Not Apply To The Transactions At Issue.**
24
25    In *Christensen v. Royal Sch. Dist.*, 156 Wn.2d 62 (2005), the Court expressed the

    following with respect to the question of duty under a negligence claim:
26

27  **DEFENDANT HERSH L. STERN'S**                          **Golbeck Roth PLLC**
                                                             **1200 Fifth Avenue**
28  **MOTION FOR SUMMARY JUDGMENT,**                            **Suite 1900**
    **ETC. –** Page 10                              **Seattle, Washington 98101**
                                                         **206 467-7026**

1   A showing of negligence requires proof of the following elements: (1) existence
    of a legal duty, (2) breach of that duty, (3) an injury resulting from the breach,
2   and (4) proximate cause. (*Citations omitted*.)  The existence of a legal duty is a
    *question of law* and "depends on mixed considerations of "logic, common sense,
3   justice, policy, and precedent."" (*Citations omitted*.)

4   *Id* at pp. 66-67 (Emphasis added.)  As a question of law, the issue of duty is properly before the

5   Court in the context of summary judgment.

6       In an attempt to establish some industry standard requiring that a suitability analysis be

7   conducted for the sale of each of the contested SPIAs, the Estate relies of the testimony of

8   proffered expert witness Vincent Micciche.  Mr. Micciche testified that he holds the opinion that

9   such an analysis was indeed required for each SPIA sale and that the sole objective authority for

10  that opinion is the Senior Protection in Annuity Transactions Model Regulation (the "Model

11  Regulation"), a proposal promulgated by the National Association of Insurance Commissioners.

12  For a myriad of reasons, the Model Regulation does not apply to these transactions and thus

13  establishes no duty.

14      Of first concern is the operative date of the Model Regulation.  The Model Regulation

15  was adopted by the NAIC on July 21, 2003, a point at which it became available for adoption by

16  the states on an individualized basis.  (Shearer Decl. 2, Exh. A thereto.)  However, the purchases

17  contested by the Estate were made from August 2001 to June 2003, before the Model Regulation

18  had even been endorsed by the NAIC.  The Model Regulation cannot provide a standard of care

19  applicable to transactions consummated prior to adoption by its sponsoring agency or enactment

20  by a single state.

21      To date Washington still has not adopted the Model Regulation.  Instead, Washington

22  relies on a disclosure-based Annuity and Deposit Fund Disclosure Regulation (the "Disclosure

23  Regulation") to insure that consumers possess the necessary information to make informed

24  decisions about the annuity products they seek to purchase.  WAC 284-23-300, et seq.

25  Importantly, immediate annuities like those contested in this case are specifically exempted from

26  the Disclosure Regulation's requirements.  WAC 284-23-320(3)(b).  Thus, the Model Regulation

27  **DEFENDANT HERSH L. STERN'S**
28  **MOTION FOR SUMMARY JUDGMENT,**
    **ETC. –** Page 11

provides no evidence of a standard of care existing in Washington or anywhere else at the time

of these transactions.  To the contrary, the fact that Washington has not adopted the Model

Regulation over five years after its adoption is evidence that its provisions do not establish any

standard of care in Washington.

Even if the Model Regulation had been adopted by Washington, its use to establish a

standard of care is in direct conflict with Section 1(B) of the Model Regulation, which provides

that:

> Nothing herein shall be construed to create or imply a private cause of action for a
> violation of this regulation.

Under the terms of the Model Regulation itself, the Estate's attempt to use it to establish a

standard for private, civil liability is misplaced.

### ii.  Stern's Conduct In Consistent With The Model Regulation Requirements.

An examination of Stern's conduct shows that he did not deviate outside of the

parameters established by the Model Regulation.  Specifically, the Model Regulation applies

only to *recommended* annuity purchases, Specifically expempting sales which do not flow from

a recommendation by the producing agent.  (Model Reg., §§ 2 and 4(A).)   Likewise, there is no

duty to conduct a suitability review under the Model Act where the customer refuses to provide

complete and/or accurate information relevant to the determination of suitability.  Here, the

undisputed facts show that Stern made no recommendations to Mr. Felts regarding any of the

annuities at issue and that Mr. Felts refused to discuss his financial circumstances with Stern.  In

fact, the evidence shows that Mr. Felts was not prone to taking advice at all, choosing instead to

rely on his own knowledge and experience accumulated through years as an industry insider as

well as an annuity purchaser.  Even under the standard advanced by the Estate, Stern acted with

due care.[11]

---

[11]Given Mr. Felts' repeated statements that he had provided for his heirs to the extent he wished, the repeated demonstrations of his understanding of the non-refund nature of the Life Only annuities at issue, his sufficient income level to handle most financial emergencies and his

**DEFENDANT HERSH L. STERN'S**
**MOTION FOR SUMMARY JUDGMENT,**
**ETC. –** Page 12

Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026

1

### D.  Stern Is Not Liable For Negligent Or Intentional Misrepresentation.

2      The Estate's fourth claim for relief is for "Negligent or Intentional Misrepresentation"

3   and is based on allegations that defendants failed to disclose 1) "the existing statistical life

4   expectancy of a person the same age" as Mr. Felts, 2) "that accepting borrowed money as

5   premiums on annuity contracts violates insurance industry standards," and 3) "it is against

6   industry standards to sell SPIA contracts to consumers over ninety (90) years of age."  (Comp., ¶

7   7.3.)  As set forth below, this claim too must fail.

8      ### i. Stern Owed No Duty To Disclose The Matters Alleged.

9      With respect to negligent misrepresentation, the Washington Supreme Court recently

10  stated the following:

11      A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and
        convincing evidence that (1) the defendant supplied information for the guidance
12      of others in  their business transactions that was false, (2) the defendant knew or
        should have known that the information was supplied to guide the plaintiff in his
13      business transactions, (3) the defendant was negligent in obtaining or
        communicating the false information, (4) the plaintiff relied on the false
14      information, (5) the plaintiff's reliance was reasonable, and (6) the false
        information proximately caused the plaintiff damages. [*Citations omitted.*]  An
15      omission alone cannot constitute negligent misrepresentation, since the plaintiff
        must justifiably rely on a misrepresentation. [*Citations omitted.*] Moreover, the
16      plaintiff must not have been negligent in relying on the representation. [*Citations
        omitted.*]
17
    *Ross v. Kirner*, 162 Wn.2d 493, 499-500 (2007).
18
19      The Court in *Stiley v. Block*, 130 Wn.2d 486, 505 (1996) stated the requirements for a

    claim of intentional misrepresentation:
20

21      Each element of fraud must be established by "clear, cogent and convincing
        evidence."  [*Citations omitted.*] The nine elements of fraud are: (1) representation
22      of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its
        falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6)
23      plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the
        representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the
        plaintiff.
24

25

26  professed desire to maximize income, Mr. Felts was in fact a suitable purchaser for these Life
    Only SPIAs.
27  **DEFENDANT HERSH L. STERN'S**

28  **MOTION FOR SUMMARY JUDGMENT,**
    **ETC. –** Page 13

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

1    For both negligent and fraudulent misrepresentation claims, only where there is a duty to

2    speak will the failure to do so become actionable.   *Colonial Imports v. Carlton Northwest*, 121

3    Wn.2d 726, 732 (1993).  Such a duty may be found where there is some sort of special

4    relationship of trust and confidence exists between the parties.   *Id*.  Ordinarily, absent such

5    special circumstances, no duty to disclose exists where "the parties are dealing at arm's length."

6    *Id* at 731-732.

7    While the relationship between Mr. Felts and Stern did in fact exist for approximately a

8    decade, it certainly was not such that it rose to the level of a special relationship under the law.

9    Stern never supplied advice to guide Mr. Felts in his business transactions (thus failing the first

10   element of negligent misrepresentation) and Felts never asked for any.  While Stern certainly

11   respected Mr. Felts' intelligence, honesty and integrity and hopes that Mr. Felts felt reciprocally,

12   the relationship between Stern and Felts was no more than that existing between parties to an

13   arm's length transaction.  Because the Estate cannot point to any facts which would indicate that

14   Mr. Felts' sought out Stern's advice in a relationship of trust and confidence, Stern had no duty

15   to disclose the matters alleged and cannot be liable for negligent or intentional misrepresentation

16   as a matter of law.

17        **ii.  Stern Disclosed The Life Expectancy Data And Did Not
          Cause Felts Any Damage.**

18   In any event, Stern did disclose the life expectancy data alleged through the publication

19   of his Annuity Shopper periodical, which was sent to every Stern customer, including Mr. Felts,

20   upon release.  Further, as Ms. Charles testified, Mr. Felts would have known where to obtain

21   such data had he desired it whether Stern had provided it or not.  (Charles Depo., p.137, ll.2-15.)

22   As for the alleged concealment regarding the use of borrowed funds, Stern had no idea

23   that Mr. Felts may have used borrowed funds to purchase the annuities in question until after Mr.

24   Felts' death and had no duty to take affirmative efforts to learn of the loan.  Even if some

25   standard existed precluding the use of borrowed money to purchase fixed immediate annuities (a

26

27   **DEFENDANT HERSH L. STERN'S**
28   **MOTION FOR SUMMARY JUDGMENT,
     ETC. –** Page 14

claim which Stern will dispute at trial), Stern could not disclose what he did not know.  Mr. Felts suffered no damage from any act or omission by Stern.

Because there can be no misrepresentation by omission claim where, as here, there exists no affirmative duty to speak, because Stern disclosed life expectancy tables and because the evidence shows that Mr. Felts did not rely on any alleged omission to his damage, Stern is entitled to summary judgment on the fourth claim for relief.

**E.  Incorporation By Reference**.

Stern specifically incorporates the arguments in Genworth's concurrently filed brief regarding causation, allocation of risk, the economic loss rule, statue of limitations, consumer protection act violations, Statutory violations (insurance regulations) and criminal profiteering by reference.

**F.  There Are No Grounds Upon Which To Base Any Injunctive Relief.**

There was no deception or harm caused to Mr. Felts and thus no grounds for the eighth claim for injunctive relief.  Further, Mr. Felts' demise, coupled with the Court's order denying class certification, calls into question the Estate's standing to even seek injunctive relief.  There are no grounds to rescind the contracts relief and any declaratory judgment should provide that the Estate has no rights against Stern arising out of the alleged transactions.        Judgment should enter on the eighth claim for relief as a matter of law.

**4.  Conclusion.**

As set forth above, the material facts of this case are not in serious dispute and Stern is entitled to judgment as a matter of law on each of the Estate's claims for relief.  Accordingly,

///

///

///

///

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC. –** Page 15

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**

Stern asks that this motion for summary judgment, or alternatively summary adjudication of individual claims, be granted.

Respectfully submitted on this 15th day of August, 2008

Golbeck Roth, PLLC

/s/ Patrick L. Hinton

By: _____
Mark Roth, WSBA No. 21137
Patrick L. Hinton, WSBA No. 31473
Attorneys for defendants Hersh Stern and
Immediateannuities.com

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC. –** Page 16

1

2

3

4

**CERTIFICATE OF SERVICE**

I, Patrick L. Hinton, hereby certify that on August 15, 2008, I electronically filed the document to which this certificate is attached with the Clerk of Court using the CM/ECF system. The Court or the CM/ECF system will send notification of such filing to the following electronically, with such notice constituting service of such documents:

5   Stephen M. Rummage:            steverummage@dwt.com

6
7   Richard Lawrence Martens:      rmartens@martenslegal.com;

8                                  mmorgan@martenslegal.com;

9                                  sstolle@martenslegal.com;

10                                 lhopkins@martenslegal.com;

11                                 rmcgillis@martenslegal.com

12  Steven A. Stolle               sastolle@yahoo.com

13

14

15  DATED this 15th day of August 2008.

16

17

18                                 GOLBECK ROTH, PLLC

19                                 BY:  /s/ Patrick L. Hinton
                                       Patrick L. Hinton, WSBA 31473
20                                     Attorneys for defendants Hersh Stern
                                       and ImmediateAnnuities.com
21                                     E-mail: phinton@golbeckroth.com

22

23

24

25

26

27

28

**DEFENDANT HERSH L. STERN'S
MOTION FOR SUMMARY JUDGMENT,
ETC. –** Page 17

**Golbeck Roth PLLC
1200 Fifth Avenue
Suite 1900
Seattle, Washington 98101
206 467-7026**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT HERSH L. STERN'S**
**MOTION FOR SUMMARY JUDGMENT,**
**ETC.** – Page 18

**Golbeck Roth PLLC**
**1200 Fifth Avenue**
**Suite 1900**
**Seattle, Washington 98101**
**206 467-7026**